IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| WILLIAM A. WHITE, # 13888-084, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 17-cv-1059-JPG |
| MARK INCH, T. SLOOP, BILL TRUE, and KEVIN MYERS, | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at the USP-Marion ("Marion"), brings this action for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He claims that incoming publications have been improperly withheld from him and destroyed, and asserts that his ability to communicate with lawyers and court officials has been unconstitutionally curtailed or denied. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

1

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

### **The Complaint**

Plaintiff names Mark Inch (Director of the Federal Bureau of Prisons – "BOP"), T. Sloop (Marion Assistant Warden), Bill True (Marion Warden), and Kevin Myers (BOP Intelligence Analyst) as Defendants. However, on October 16, 2017, Plaintiff filed a motion to voluntarily dismiss Myers from the action, as well as dismiss the claims based on Myers' conduct. (Doc. 5).

That motion shall be granted, therefore, the summary of Plaintiff's Complaint (Doc. 1) below omits the content that shall be dismissed.

According to the Complaint, on October 16, 2016, Sloop denied Plaintiff 2 identical copies of the publication *White Voice*. (Doc. 1, pp. 12; 16). The reason was that the newsletter contained a photograph of a conflict between an "Antifa" and "a white person." (Doc. 1, p. 16; Doc. 1-2, pp. 4-9). Plaintiff invoked his right to review the publication before it was disposed of, but Sloop got rid of the material before Plaintiff could see it.

On April 4, 2017, True withheld another issue of *White Voice* (No. 57). (Doc. 1, pp. 12-13; 17). That material was denied because it contained an ad promoting a skinhead group, but Plaintiff asserts the same ad was allowed into the prison in other publications. (Doc. 1, p. 17; Doc. 1-2, pp. 10-12). Again, Plaintiff was denied his right to review the material before it was disposed of.

On April 20, 2017, True used a "pretextual reason" to deny Plaintiff a book entitled *Talmud Unmasked*, which had been sent to Plaintiff unsolicited. (Doc. 1, pp. 13, 17). True's reason was that the book "advocate[es] violence, and, murder." (Doc. 1, p. 17; Doc. 1-2, p. 15). Plaintiff disputes that characterization of the book. He was not allowed to review it before it was disposed of. (Doc. 1, p. 17).

Plaintiff raises First Amendment and Due Process claims for the withholding of his publications. (Doc. 1, p. 12). He takes issue with BOP Policy Statements governing "special mail" privileges for inmates in the Communications Management Unit ("CMU"), where he is housed (PS 5214.02), and the handling of incoming publications (PS 5266.11). He asserts that both regulations as well as 28 C.F.R. §540.203(b) and § 540.71(b) violate the First Amendment and are void for vagueness. (Doc. 1, p. 12). He sues Inch, in his official capacity, over the

unconstitutionality of those regulations. (Doc. 1, p. 13). Plaintiff quotes the regulations on incoming publications, which state in part, "The Warden may reject a publication only if it is determined detrimental to the security, good order, or, discipline, of the institution, or, if it might facilitate criminal activity." (Doc. 1, p. 14). The regulation then goes on to give more specific descriptions of content which would be prohibited.

The CMU regulations Plaintiff contests state that "special mail . . . is limited to privileged communications with the inmate's attorney." (Doc. 1, pp. 13-14). Plaintiff notes that he has been involved in civil litigation and proceedings under 28 U.S.C. §2255 during the time when his claims arose. As such, he needed to communicate with the courts, as well as conduct investigation and contact expert witnesses. (Doc. 1, p. 15). In June and July 2017, Plaintiff attempted to communicate "by legal mail" with the Seventh and Eleventh Circuit Courts of Appeal; the U.S. District Courts for the Northern District of Illinois, Western District of Virginia, and Middle District of Florida; with Dr. Eric Ostrov (a psychological expert and attorney); and with Rachel Meeropol (attorney with the Center for Constitutional Rights). (Doc. 1, p. 15). However, Plaintiff was not permitted to communicate with any of these entities or persons via confidential legal mail. *Id.* He also attempted to communicate via confidential legal mail with other attorneys, investigators, and experts whom he does not name, but was not permitted to do so. (Doc. 1, p. 16.

Plaintiff's incoming and outgoing legal mail was delayed for as long as 3 months, and he was thus "effectively unable to communicate with experts, and, investigators." (Doc. 1, p. 16). Plaintiff therefore requested counsel to be appointed for him in Case No. 17-cv-683 pending in this Court, and in a pending Florida federal case (Case No. 14-cv-936 (M.D. Fla.)). *Id.*

Plaintiff seeks injunctive and declaratory relief as well as monetary damages. (Doc. 1, p.

20).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** First Amendment claim against Sloop, for withholding the *White Voice* publication from Plaintiff on October 16, 2016, where the rejection was not reasonably related to legitimate penological interests;
>
> **Count 2:** Fifth Amendment due process claim against Sloop, for disposing of Plaintiff's property (the *White Voice* issues) in October 2016, without allowing Plaintiff to contest the action or review the publication before it was disposed of;
>
> **Count 3:** First Amendment claim against True, for withholding another issue of *White Voice* from Plaintiff on April 4, 2017, based on an ad that had been allowed into the prison in other publications;
>
> **Count 4:** First Amendment claim against True, for withholding the *Talmud Unmasked* book from Plaintiff on April 20, 2017, where the rejection was not reasonably related to legitimate penological interests;
>
> **Count 5:** Fifth Amendment due process claim against True, for disposing of Plaintiff's property (the *White Voice* issue and *Talmud Unmasked* book) in April 2017, without allowing Plaintiff to contest the action or review the publications before they were disposed of;
>
> **Count 6:** Claim against Inch in his official capacity, for maintaining policies that resulted in publications being withheld from Plaintiff, and caused him to be unable to engage in confidential communications with attorneys, investigators, and the courts;
>
> **Count 7:** Claim against unidentified official(s) for refusing to allow Plaintiff to use confidential legal mail to correspond with federal courts, expert/attorney Ostrov, attorney Meeropol, and other investigators, experts, and attorneys;

**Count 8:** Claim against unidentified official(s) for delaying the delivery and/or mailing of Plaintiff's incoming and outgoing legal mail.

The First Amendment claims in Counts 1, 3, and 4 shall proceed for further consideration. The due process claims in Counts 2 and 5, and the mail claims in Counts 7 and 8, shall be dismissed without prejudice for failure to state a claim upon which relief may be granted. Count 6 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 1 – First Amendment - Sloop

Plaintiff alleges that on October 16, 2016, the prison received 2 identical copies of the *White Voice* newsletter which were sent to him unsolicited, one by an individual and the other by the Northwest Publishing Agency. (Doc. 1, p. 16). Sloop rejected both copies, based allegedly on a photograph "depicting a conflict between an Antifa, and, a white person, presumably at a political event." *Id.* In Sloop's letter rejecting the publication, he stated that it "contains information which poses a threat to security, good order, or discipline of the institution." (Doc. 1-2, pp. 7-8). The key issue relevant to Plaintiff's constitutional claim is whether Sloop properly rejected the publication based on the legitimate penological interests he sets forth in his letter.

The freedom of speech protected by the First Amendment is not merely freedom to speak; it is also freedom to read. *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638-39 (7th Cir. 2005) (citing *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Lamont v. Postmaster General*, 381 U.S. 301, 306-07 (1965)). While inmates do not lose their constitutional rights upon being confined in prison, some restrictions on those rights may properly be imposed by prison authorities. In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. On the other hand, "the arbitrary denial of

6

access to published materials violates an inmate's first amendment rights." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996) (quoting *Martin v. Tyson*, 845 F.2d 1451, 1454 (7th Cir.) (per curiam), *cert. denied*, 488 U.S. 863 (1988)).

*Turner* outlined four factors which courts must consider in evaluating whether a regulation restricting prisoners' rights is sufficiently reasonably related to legitimate penological interests to withstand constitutional scrutiny: "(1) the validity and rationality of the connection between a legitimate and neutral government objective and the restriction; (2) whether the prison leaves open 'alternative means of exercising' the restricted right; (3) the restriction's bearing on the guards, other inmates, and the allocation of prison resources; and (4) the existence of alternatives suggesting that the prison exaggerates its concerns." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012) (citing *Turner*, 482 U.S. at 89-91).

In this case, the withholding of Plaintiff's reading material under the prison's regulations regarding acceptable publications would run afoul of the First Amendment if the reason for refusing access to the particular newsletter does not hold up to analysis under the *Turner* reasonableness factors.

Further factual development will be required in order to determine whether the denial of Plaintiff's reading material violated his First Amendment rights. Accordingly, the claim against Sloop in **Count 1** survives threshold review and may proceed for further consideration.

### Dismissal of Count 2 – Due Process – Sloop

With this claim, Plaintiff asserts that Sloop's "taking" of his publications amounted to a deprivation of property without due process of law. (Doc. 1, p. 12). The Supreme Court has held that deprivation of an inmate's property does not violate the due process clause *if* the government provides an adequate remedy. *Hudson v. Palmer*, 468 U.S. 517, 536 (1984). The

Federal Tort Claims Act has provided an avenue for redress where a prisoner's property rights are infringed through the negligent acts of prison officials. *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003) (discussing *United States v. Muniz*, 374 U.S. 150 (1963)). However, the FTCA contains an exception (28 U.S.C. § 2680(c)) providing that the FTCA cannot be used to bring "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer."

The Supreme Court has held that this language applies to instances in which an inmate attempts to sue the United States where a federal prison has lost his or her property. *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 227-28 (2008). The Court further held in the *Ali* case that Federal Bureau of Prisons employees are "other law enforcement officers" under the FTCA, which means that prisoners whose property is "detained" by Federal Bureau of Prisons employees cannot bring suit under the FTCA. *Ali*, 552 U.S. 214. This ruling removes the FTCA as an adequate remedy for inmates who allege deprivation of personal property at the hands of a federal prison official. *See also Parrott v. United States*, 536 F.3d 629, 636 (7th Cir. 2008).

However, other administrative procedures are available to potentially compensate a federal inmate for the loss of property. *See* 31 U.S.C. §§ 3723-3724; *see also Ali*, 552 U.S. at 228 n. 7; *United States v. Norwood*, 602 F.3d 830, 836 (7th Cir. 2010). A post-deprivation procedure may include: (1) a claim under 31 U.S.C. § 3723, which allows small claims (up to $1,000) to be presented to the agency for redress of damages caused by the negligent acts of a federal officer; or (2) a claim under 31 U.S.C. § 3724, which allows the Attorney General of the United States to settle claims for losses caused by employees of the Department of Justice. *Id.*; *See Hoskins v. Craig*, Case No. 11-cv-296-GPM, 2013 WL 675734, at *2-3 (S.D. Ill. Feb. 25, 2013); *Adeyi v. FCI Fort Dix Health Servs.*, Case No. 09-cv-5316, 2012 WL 2076520, at *5

(D.N.J. June 7, 2012). Claims under either § 3723 or § 3724 must be presented to the administrative agency within one year. 31 U.S.C. §§ 3723-3724. A claim settled under either section of the statute is final, and not subject to judicial review. 31 U.S.C. § 3721(k); *Norwood*, 602 F.3d at 836.

The availability of an adequate administrative remedy for any property loss suffered by Plaintiff for the value of his publications forecloses him from pursuing a due process claim within a *Bivens* action. *See Hoskins v. Craig*, Case No. 11-cv-296-GPM, 2013 WL 675734, at *2-3 (S.D. Ill. Feb. 25, 2013). Accordingly, the due process claim in **Count 2** shall be dismissed without prejudice.

### Counts 3 and 4 – First Amendment – True

Plaintiff describes 2 incidents where True rejected publications intended for Plaintiff. On April 4, 2017, another issue of *White Voice* was rejected because it contained a paid advertisement from a skinhead group. (Doc. 1-2, p. 11). True concluded that the material constituted "gang paraphernalia" and posed a "threat to security, good order, or discipline of the institution." *Id.* That incident is designated as Count 3. Plaintiff asserts that while True barred him from receiving his newsletter, other publications including the identical ad were permitted for other inmates.

Count 4 is based on the April 20, 2017, incident when True rejected a book entitled *The Talmud Unmasked*, which was sent to Plaintiff unsolicited by a publishing company. (Doc. 1, p. 17). Plaintiff disputes True's characterization of the book as "advocating violence and murder." (Doc. 1, p. 17; Doc. 1-2, pp. 15-16).

The same legal standards discussed under Count 1 apply to the claims in Counts 3 and 4. Additional facts will be necessary in order to determine whether the publications were properly

rejected for legitimate penological reasons, or whether True's actions violated Plaintiff's First Amendment rights. At this early stage of the litigation, both claims survive threshold review. **Count 3** and **Count 4** may proceed against True for further consideration.

### Dismissal of Count 5 – Due Process – True

As discussed under Count 2, a federal prisoner may not maintain a *Bivens* claim based on the loss of property without due process, so long as an adequate remedy for the deprivation is available. Because Plaintiff may avail himself of the administrative remedy provided under 31 U.S.C. §§ 3723-3724, which provides a process to address a deprivation of property after the occurrence, the due process claim in **Count 5** shall also be dismissed.

### Dismissal of Count 6 – Inch

Plaintiff articulates an official-capacity claim against BOP Director Inch, for maintaining the policies that led to Plaintiff's publications being rejected as described in Counts 1, 3, and 4. Similarly, Plaintiff sues Inch in his official capacity over the mail policies that prevented him from using confidential "legal mail" to communicate with attorneys, investigators, and the courts.

The claims against Inch fail at the outset, because a plaintiff cannot sue a defendant in his or her official capacity in the context of a *Bivens* action. A suit against a federal officer in his/her official capacity is a suit against the United States itself. *Kentucky v. Graham,* 473 U.S. 159, 165-67 (1985); *Del Raine v. Carlson*, 826 F.2d 698, 703 (7th Cir. 1987). Neither the federal government nor any of its agencies is amenable to suit in a *Bivens* action. *See FDIC v. Meyer*, 510 U.S. 471, 475; 483-86 (1994) (sovereign immunity shields the federal government from suit absent a waiver; *Bivens* action permits suit only against an individual who is an agent of the federal government). *See Bunn v. Conley*, 309 F.3d 1002, 1009-10 (7th Cir. 2002). Instead,

"*Bivens* claims are brought against the relevant officials in their individual capacity." *Bunn*, 309 F.3d at 1009.

For these reasons, **Count 6** against Inch shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 7 – Inability to use "Legal Mail" for Correspondence

Plaintiff complains that unnamed prison official(s) would not allow him to use the "confidential legal mail" system to communicate with several federal courts. Similarly, he was barred from using confidential communications with Dr. Ostrov, whom Plaintiff describes as a psychological expert and attorney; and with attorney Meeropol of the Center for Constitutional Rights. (Doc. 1, p. 15). Plaintiff also tried to communicate with other investigators, experts, and attorneys, whom he does not identify, nor does he elaborate on the nature of those attempted communications. (Doc. 1, p. 16).

Prison inmates retain the First Amendment right to send and receive mail, subject to the mail being screened for possible contraband. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). Legal mail – that is, correspondence between a prisoner and an attorney who is or may be providing legal representation to the prisoner, is given heightened protection, in order to avoid interference with the inmate's right to access the courts. *Kaufman v. McCaughtry*, 419 F.3d 678, 685-86 (7th Cir. 2005); *Rowe*, 196 F.3d at 782.

On the other hand, mail between an inmate and a clerk of court does not receive enhanced protection. Because documents received from litigants are ordinarily filed as part of the court's docket in each case, such correspondence becomes part of the public record. *See Martin v. Brewer*, 830 F.2d 76, 78 (7th Cir. 1987); ("with minute and irrelevant exceptions all correspondence from a court to a litigant is a public document, which prison personnel could if

they want inspect in the court's files"); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). The Complaint thus does not state a claim based on Plaintiff being denied permission to send correspondence to the courts through the "confidential legal mail" procedure.

As to Plaintiff's attempts to send confidential correspondence to expert/attorney Ostrov, attorney Meeropol, and "certain other attorneys," he may have a viable constitutional claim if the intended recipient was providing legal representation to Plaintiff, or if he was seeking representation from the attorney. (Doc. 1, pp. 15-16). The Complaint does not address that matter. *See Kaufman*, 419 F.3d at 686 (no constitutional violation occurred for opening inmate's correspondence that was not with an attorney who represented him, and where inmate was not seeking representation from the attorney). In addition, a plaintiff must show that an interference with privileged mail caused some detriment to his ability to litigate a meritorious claim. *See Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010); *Delgado v. Godinez*, 2017 WL 1512384 at *2, 683 F. App'x 528 (7th Cir. 2017).

The final flaw in Plaintiff's attempt to state a claim for interference with his attempts to send (possibly privileged) mail is that he fails to associate any Defendant or other prison official with this claim. Civil rights actions under *Bivens*[1] and 42 U.S.C. § 1983 are causes of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (internal quotations and citations omitted). In order to state a claim against a defendant, a plaintiff must describe what each named defendant did (or failed to do), that violated the plaintiff's constitutional rights. Furthermore,

---

[1] A *Bivens* action is the federal-prisoner equivalent of a § 1983 civil rights action. *See Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005); *Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (collecting cases).

merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

In the statement of claim describing Plaintiff's attempts to communicate by "legal mail," he fails to mention any individual who denied him permission to send letters via confidential correspondence. (Doc. 1, pp. 13-16). Thus, he fails to state a claim against any of the Defendants for this conduct. **Count 7** shall therefore be dismissed without prejudice.

### Dismissal of Count 8 – Delay in Incoming & Outgoing "Legal Mail"

Finally, Plaintiff claims that the denial of permission to use the confidential legal mail system resulted in delays up to 3 months of his incoming and outgoing "legal mail." (Doc. 1, p. 16). He states that the delays made him "effectively unable to communicate with experts, and, investigators." *Id*. To address this problem, Plaintiff requested this Court to appoint him counsel in *White v. United States*, Case No. 17-cv-683-JPG-SCW, and requested the appointment of counsel in his pending Florida case, *White v. Eslinger*, No. 14-cv-936 (M.D. Fla.). On October 2, 2017, the same day the instant case was filed, counsel was in fact recruited to represent Plaintiff in this Court in *White v. United States*, Case No. 17-cv-683-JPG-SCW.

The docket sheet in Plaintiff's Florida case does not reflect a decision on his request for counsel in that pending matter. However, the docket sheet shows that Plaintiff successfully filed 2 motions on September 25, 2017 (d/e 167, 168 in Case No. 14-cv-936 (M.D. Fla.)); 2 more motions on September 26, 2017 (d/e 169, 170); a Fourth Amended Complaint (d/e 176 dated October 31, 2017); and another motion on November 6, 2017 (d/e 177).

As noted in the discussion under Count 7, Plaintiff's description of his correspondence is insufficient to allow the Court to determine whether any of it may be classified as privileged

attorney-client communication. Moreover, in order to state a constitutional claim for denial of access to the courts, Plaintiff must describe how a Defendant's conduct caused a detriment to his ability to pursue a claim or defense in court. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Lewis v. Casey*, 518 U.S. 343, 352-53 (1996); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (to state a claim for denial of access to the courts, inmate must show how defendant's conduct led to his inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions). In Plaintiff's case, the docket sheets in the 2 cases he references do not reveal any hindrance to his ability to prosecute those matters, and the Complaint does not elaborate on that question.

Additionally, Plaintiff again fails to disclose which Defendant or other official is alleged to have caused delay(s) in his incoming or outgoing correspondence.

For these reasons, **Count 8** shall also be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Pending Motion

On October 16, 2017, Plaintiff filed a motion (Doc. 5) to voluntarily dismiss his claims against Defendant Myers, and to dismiss the claims labeled in the Complaint as 1(c) and 1(i). This motion (Doc. 5) is **GRANTED**.

### Disposition

**COUNTS 2, 5, 7, and 8** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 6** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **INCH** and **MYERS** are **DISMISSED** from this action without prejudice.

In order for **COUNTS 1, 3, and 4** to proceed, The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **SLOOP** and **TRUE**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants **SLOOP** and **TRUE** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[2] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the Complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the Complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

---

[2] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 28, 2017**

> *s/J. Phil Gilbert*
> United States District Judge